UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| LUVENIA S. BARTEE, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    **Civil Action No. 1:09-01280** |
| | ) |
| GEORGE GARRETT, | ) |
| Counselor, FPC Alderson, *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

On November 24, 2009, Plaintiff,[1] acting *pro se* and formerly incarcerated at FPC Alderson in Alderson, West Virginia, filed her Application to Proceed *in Forma Pauperis* and Complaint claiming entitlement to relief pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619(1971).[2] (Document Nos. 2 and 3.) Plaintiff names the following individuals as Defendants: (1) George Garrett, Counselor at FPC Alderson; and (2) Tina Altizer, Unit Manager at FPC Alderson. Plaintiff alleges that the Defendants have violated her constitutional rights by placing her in the "bus stop" as a sanction for "IFRP refusal." (Id., pp. 4 - 5.) First, Plaintiff alleges that she was improperly sanctioned for "IFRP refusal." (Id., p. 4.) Plaintiff explains as follows:

> On September 13, 2008, I was summoned to Mr. Garrett's office in reference to my IFRP payments. On this day, Mr. Garrett stated that my IFRP payments would increase to $165.00. Prior to this I had made all scheduled payments to IFRP on time

---

[1] The Bureau of Prisons' Inmate Locator indicates that Plaintiff is currently at CCM Raleigh, located in Butner, North Carolina.

[2] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

> in the amount of $62.00 monthly. I stated to Mr. Garrett that I could not obligate my family to pay this amount without first consulting my husband. I stated that I would speak with my husband to see if he could afford the $165.00 monthly payment. On September 16, 2008, I attended my team meeting. At this meeting, I informed Unit Team that I had spoken with my husband and he had agreed to pay this monthly obligation for me. Mrs. Morseman (case manager) at that time extended my time to sign the contract to the end of the month. However, Mr. Garrett placed me in IFRP refusal on September 13, 2008. He did not comply with Mr. Morseman's instruction and he placed me on the Bus Stop for refusal to sign the contract (see enclosed team paper). The Unit Team did verify that they received my September payment and my payments were current. Therefore, I should not have been sanctioned at this time. Nevertheless, I was placed on the bus stop where I am still housed today, 14 months later. I have made several attempts to pay my IFRP payment for almost a year. I have spoken with Tina Alttizer and Mrs. Morseman in regards to this. However, I was unable to get anyone's attention until September 11, 2009, when I submitted a cop-out to Mr. Garrett notifying him that I planned to file an administrative remedy and contact the Office of Responsibility. (Have a copy of this cop-out). After my attorney contacted Mr. Garrett, he finally accepted my two months payment on 10/10/2009. However, Mr. Garrett has still refused to move me.

(Id., pp. 4 - 5.) Plaintiff acknowledges that she is aware that an inmate "may be sanctioned for refusal to pay." (Id., p. 5.) Plaintiff, however, states that she was "willing to pay and attempted on numerous time to remedy this." (Id.) Plaintiff contends that the staff at Alderson were "only interested in punishing [her] by placing [her] at the bus stop." (Id.)

Next, Plaintiff contends that her placement at "bus stop" resulted in cruel and unusual punishment in violation of her Eighth Amendment rights. Specifically, Plaintiff alleges as follows:

> The bus stop is a fire hazard, it is also unsanitary and close to the restroom that more than 150 women use. There is constant lighting, excessive noise, due to the bus stop being placed in the common area. I have been deprived of sleep due to the constant lighting and excessive noise. I sleep directly across from the water fountain (maybe 3 or more feet). I have been sprayed with water from other inmates mouths while I was asleep. I have also been threatened by other inmates when I tried to address the loud noise. I did inform Mr. Garrett and Mr. Morseman of the incident by way of cop-out. My situation here at the bus stop does constitute cruel and unusual punishment. I am now being forced to stay there and I am no longer sanctioned.

(Id.) Accordingly, Plaintiff requests the following relief: (1) An "award of money damages in the amount of $100,000.00;" and (2) The Court "grant injunctive relief by ensuring that housing is safe

and sanitary, set time limit on sanction for IFRP refusal." (Id., p. 6.)

## THE STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at . A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327-28, 109 S.Ct. at 1833. A complaint, therefore, fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle her to relief. With these standards in mind, the Court will assess Plaintiffs' allegations in view of applicable law.

## ANALYSIS

The allegations stated in Plaintiff's Complaint asserting violations of her constitutional rights are cognizable under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18,

60 L.Ed.2d 846 (1979)(extending <u>Bivens</u> to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A <u>Bivens</u> action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law. The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

      **1.**      **<u>No Liberty Interest in Housing Assignments.</u>**

Plaintiff appears to allege that her constitutional rights were violated when Defendants filed a false Inmate Financial Responsibility Program [IFRP] refusal, which resulted in Plaintiff's placement at the "bus stop."[3] (Document No. 2, pp. 4 - 5.) The Fifth Amendment protects against deprivations of life, liberty, or property by the federal government. <u>See</u> U.S. Const. amend. V. In order to prevail on a due process claim, a plaintiff must show that the government has interfered with a protected liberty or property interest and that the procedures that led to the deprivation were constitutionally sufficient. Thus, plaintiff must first demonstrate that she had a protected liberty interest. The fact of conviction and imprisonment implies the inmate's transfer of her liberty to prison officials, who in

---

[3] Apparently, the "bus stop" is a less desirable housing unit at FPC Alderson.

4

their broad discretion, administer her sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which she has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

To the extent that Plaintiff alleges a liberty interest in not being placed at the "bus stop" for to her alleged failure to participate in IFRP, the undersigned finds that Plaintiff's claim is without merit.[4]

---

[4] The purpose of the IFRP is to "encourage each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. "The provisions of this rule apply to all inmates in federal facilities, except: Study and observation cases, pretrial detainees, and inmates in holdover status pending designation." *Id.* Section 545.11 provides that "[w]hen an inmate has a

Nothing in the record indicates that Plaintiff's conditions of confinement in the "bus stop" were atypical or resulted in a significant hardship.[5] See United States v. Lemoine, 546 F.3d 1042, 1049-50 (9th Cir. 2008)(finding that the "consequences for declining to participate in the IFRP also do not constitute such an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' that they invoke [plaintiff's] liberty interest"). Furthermore, the Due Process Clause

---

financial obligation, unit staff shall help that inmate develop a financial plan and shall monitor the inmate's progress in meeting that obligation." 28 C.F.R. § 545.11. An "inmate is responsible for making satisfactory progress in meeting his/her financial responsibility plan and for providing documentation of these payments to staff." 28 C.F.R. § 545.11(b). An inmate's process in IFRP "will be reviewed each time staff assess an inmate's demonstrated level of responsible behavior." 28 C.F.R. § 545.11(c). "Refusal by an inmate to participate in the financial responsibility or to comply with the provisions of his financial plan ordinarily shall result in the following: . . . (7) The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.) . . .". 28 C.F.R. 545.11(d). The Second Circuit has recognized that the "IFRP program serves a valid penological interest and is fully consistent with the Bureau of Prisons' authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation." *Johnpoll v. Thornburgh*, 898 F.2d 849, 851 (2nd Cir. 1990). Furthermore, compelled participation in IFRP is neither punitive in nature nor a violation of due process because it is reasonably related to a legitimate governmental objective of rehabilitation. *Id.*; *also see Cupp v. Reed*, 2009 WL 277554 (N.D.W.Va. Feb. 5, 2009)(finding that plaintiff failed to state a claim because "it is well-established that the BOP's inmate financial responsibility program is constitutional and that the negative consequences of not participating in the program are neither punitive nor do they violate the constitution").

[5] In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the Fourth Circuit determined that the following conditions in administrative segregation did not implicate Plaintiffs' liberty interest:

> ...cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

does not give an inmate a liberty interest in a certain housing assignment. See Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989)(stating that "the law is clear that prisoners have no constitutionally protected liberty interest in remaining in a particular wing of a prison"); Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), citing Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"); Altizer v. Paderick, 569 F.2d 812 (4th Cir. 1978)(holding that federal due process constraints are not implicated because the classification of a State prison inmate is a matter of State prison officials' discretion); and Meachum v. Farno, 427 U.S. 215, 225 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a liberty interest). Thus, Plaintiff's claim of a liberty interest in not being placed in the "bus stop" is without merit. To the extent Plaintiff complains that Defendants improperly found her to be in IFRP refusal, Plaintiff's claim must fail because due process is not implicated where there is no liberty interest. See Petway v. Lappin, 2008 WL 629998 (N.D.W.Va. Mar. 5, 2008)(finding that plaintiff's "due process complaints concerning either the misapplication of policy and procedures, or a lack of official rules and regulations, must fail" because the inmate had no protected liberty interest in avoiding segregated confinement"). Accordingly, the undersigned finds that Plaintiff's claim is without merit.

    **2.**    **No Eighth Amendment Violation.**

Next, the undersigned views Plaintiff's Complaint as setting forth a claim under the Eighth

Amendment. Plaintiff contends that the conditions of confinement at FPC Alderson constitute cruel and unusual punishment. As a general matter, the Eighth Amendment prohibits punishments which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus, under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. at 2399; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation

under an objective standard, and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") Therefore, Plaintiff must allege and eventually establish a "sufficiently serious" deprivation of the conditions of their confinement resulting in "serious or significant physical or mental injury" in order to maintain and prevail upon her Eighth Amendment claim.

Plaintiff contends that her placement in the "bus stop" at FPC Alderson was cruel and unusual based upon the following: excessive noise, continual lighting, and inadequate ventilation.[6] (Document No. 2, pp. 2 - 4.) In Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), the Supreme Court held that "some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food,

---

[6] Plaintiff also states that the bus stop is a "fire hazard." (Document No. 2, p. 5.) Plaintiff, however, fails to allege any facts to support her conclusory allegation.

warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." Plaintiff claims that while she was located at the "bus stop," she was deprived of sleep due to the "constant lighting and excessive noise." Although sleep can constitute a basic human need, Plaintiff fails to allege any sufficiently serious deprivation of her basic human need for sleep as to constitute an Eighth Amendment violation. See Murry v. Edwards County Sheriff's Dep't., 248 F.Appx. 993, 998 - 99 (10th Cir. Oct. 1, 2007)(finding that occasional disturbance of sleep by continual lighting, leading sometimes to mild physical symptoms, was not sufficiently serious to result in an Eighth Amendment violation); Nikirk v. Rodriquez, 129 F.Appx. 103, 104 (5th Cir. Apr. 20, 2005)(holding that the District Court properly dismissed inmate's claim as frivolous where inmate alleged an Eighth Amendment violation based upon a denial of sleep due to nighttime head-counts where inmate failed to allege serious physical or psychological damage); Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(stating that "sleep undoubtedly counts as one of life's basic needs); Hunnewell v. Warden, 19 F.3d 7 (1st Cir. 1994)(*unpublished decision*)(holding that inmate's claim that "cell lights are on during the night making it difficult to sleep" and "the ventilation system blows dust and fibers into his cell causing him to have headaches and bloody noses" was insufficient to state a claim under the Eighth Amendment); Ajaj v. United States, 479 F.Supp.2d 501, 512 (D.S.C. 2007)(citing Lunsford v. Bennett, 17 F.3d 1574, 1580 (7th Cir. 1994)("Subjecting a prisoner to a few hours of periodic loud noises that merely annoy, rather than injure the prisoner does not demonstrate a disregard for the prisoner's welfare."); Spivey v. Doria, 1994 WL 97756, * 11 (N.D.Ill.)(finding no constitutional violation where inmate alleged that the noise level caused him to lose sleep and made him irritable; reasoning that "federal courts are not the forums to determine proper lighting and noise levels in jails"); Hutching v. Corum, 501 F.Supp. 1276, 1293(D.Mo. 1980)(finding no constitutional violation despite all-night illumination and high noise levels at night, where inmates failed to allege "evidence

indicating that the inmates are unable to sleep at all or that they have developed psychological or physiological problems). Thus, the conditions of confinement complained of by Plaintiff amounts to nothing more than a "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." Strickler, 989 F.2d at 1380; see also Hadley v. Peters, 70 F.3d 117 (7th Cir. 1995), cert. denied, 517 U.S. 1111, 116 S.Ct. 1333, 134 L.Ed.2d 484 (1996)("Prisons are not required to provide, and prisoner cannot expect, the services of a good hotel."). Furthermore, Plaintiff fails to allege any injury resulting from the challenged conditions. Strickler, 989 F.2d at 1381(an inmate "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."); see also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993)(prisoner's Eighth Amendment claim should be dismissed if he fails to allege a serious physical or mental injury resulting from the conditions of confinement). Therefore, the undersigned finds that Plaintiff has failed to state a claim under the Eighth Amendment for which relief can be granted.[7]

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Application to Proceed *in Forma Pauperis* (Document No. 3.), **DISMISS** Plaintiff's Complaint (Document No. 2.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and

---

[7] The undersigned further notes that Plaintiff indicates that she did not fully exhaust her administrative remedies. (Document No. 2, pp. 2 and 8.) Plaintiff only indicates that she filed her "Inmate Request to Staff," which was dated September 11, 2009. Plaintiff filed her instant Complaint on November 24, 2009.

72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

Date: July 30, 2010.

_____
R. Clarke VanDervort
United States Magistrate Judge